UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:     Edith Ramirez, Chairwoman
                   Julie Brill
                   Maureen K. Ohlhausen
                   Joshua D. Wright

_____
                                      )
In the Matter of                      )
                                      )
MARCH 22, 2013 CIVIL INVESTIGATIVE DEMAND  )   File No. 122 3196
ISSUED TO CARIBBEAN CRUISE LINE, INC. )   May 9, 2013
                                      )
_____)

**ORDER DENYING PETITION TO LIMIT
OR QUASH CIVIL INVESTIGATIVE DEMAND**

**By OHLHAUSEN, Commissioner:**

Caribbean Cruise Line, Inc. ("CCL") has filed a petition to quash or limit the civil investigative demand ("CID") issued by the Federal Trade Commission ("FTC" or "Commission") on March 22, 2013. For the reasons stated below, the petition is denied.

**I.     INTRODUCTION**

In 2012, the Commission received thousands of complaints about the following version, or a nearly identical version, of an unsolicited robocall that began,

> Hello, this is John from Political Opinions of America. You've
> been carefully selected to participate in a short 30 second research
> survey and for participating, you'll receive a free two-day cruise
> for two people to the Bahamas, courtesy of one of our supporters,
> gratuitous of the small port tax that will apply.

The consumer complaints alleged that, if consumers participated in the survey, they were given three automated political survey questions. Following each question, consumers were asked to select from a series of multiple-choice answers. They were then asked whether they were "interested in reserving a free cruise to the Bahamas" and were instructed to press 1 for "yes."

1

Consumers who pressed 1 were transferred to a live CCL telemarketer.[1] The telemarketer told consumers that the "free" cruise would cost $59 per person in port taxes and attempted to "up-sell" the consumer with lodging in pre-boarding hotels, cruise excursions, enhanced accommodations, and other things.

In response to the complaints, the Commission opened an investigation of several entities, including CCL, which was identified in some complaints, to determine whether their practices constituted unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45 (as amended), or deceptive or abusive practices in violation of the Telemarketing Sales Rule, 16 C.F.R. pt 310 (as amended). On August 28, 2012, pursuant to a Commission resolution authorizing the use of compulsory process,[2] the FTC issued a CID to CCL seeking, among other things, information concerning the company's role in robocall campaigns and its telemarketing practices.[3] Although CCL filed a petition to quash or modify the CID,[4] it later withdrew that petition and provided a number of responses. After staff alerted CCL to certain deficiencies, CCL made a supplemental production.[5] Further review of the original and supplemental productions made it apparent to FTC staff that CCL had withheld

---

[1] CCL's business includes marketing and selling cruises that are operated by another company owned by CCL's parent.

[2] *See* Resolution Directing Use of Compulsory Process in a Nonpublic Investigation of Telemarketers, Sellers, Suppliers, or Others, File No. 0123145 ("Resolution"); Caribbean Cruise Line, Inc.'s Petition to Limit or Quash Civil Investigation Demand, at 6 n.17 (quoting Resolution) ("Petition"). The Resolution authorizes the use of compulsory process:

> To determine whether unnamed telemarketers, sellers, or others assisting them have engaged or are engaging in: (1) unfair or deceptive acts or practices in or affecting commerce in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (as amended); and/or deceptive or abusive telemarketing acts or practices in violation of the Commission's Telemarketing Sales Rule, 16 C.F.R. pt 310 (as amended), including but not limited to the provision of substantial assistance or support – such as mailing lists, scripts, merchant accounts and other information, products or services – to telemarketers engaged in unlawful practices. The investigation is also to determine whether Commission action to obtain redress for injury to consumers or others would be in the public interest.

[3] Petition at 5.

[4] *Id.* at 2 n.1, 5.

[5] *Id.* at 5.

2

information about its telemarketing lead generators.[6] Accordingly, on March 22, 2013, the Commission issued a follow-up CID specifically seeking such materials.[7] In particular, the CID seeks:

> D-2    All documents that relate to any entity that used or uses phone calls to generate potential leads or customers for Caribbean Cruise Line, Inc.
>
> D-4    All documents that relate to any entity that provided or used automated dialers to generate potential leads or customers for Caribbean Cruise Line, Inc.[8]

The CID also sought information about additional named entities and individuals that, based on staff's review of documents provided by CCL in its delayed supplemental response to the first CID and other investigative leads, appear to have been involved in the robocall campaign.[9] That specification in the CID seeks:

> D-1    All correspondence, electronic mails, notes on conversations, work orders, and other documents that relate to Firebrand Group SL, LLC, Employment for America, Inc., Political Boost LLC also dba CFPP Research Group, Linked Service Solutions, LLC, Jacob deJongh, Scott Broomfield or Jason Birkett.

Counsel for CCL and FTC staff conferred regarding possible limitations to the CID, but were unable to reach agreement.[10] Accordingly, on April 9, 2013, CCL filed a petition to quash or limit the CID.

---

[6] When staff inquired about the absence of any information or materials about CCL's telemarketing lead generators, CCL responded that it believed that such information and materials were not responsive.

[7] CCL suggests that by issuing the follow-up CID to obtain the materials that CCL claimed were not responsive to the first CID, the FTC was "seek[ing] an end-run around" its duty to enforce the first CID. Petition at 5. The Commission does not have such a duty. It is well established that agencies have discretion with regard to the manner in which they approach such decisions. *See, e.g., Weight Watchers Int'l, Inc. v. FTC*, 47 F.3d 990, 992 (9th Cir. 1995). Here, the Commission issued a follow-up CID to request those materials that were not produced in response to the original CID as well as additional materials related to new areas of concern.

[8] Petition at 6, 7.

[9] *Id.* at 2.

[10] *Id.* at 10.

3

## II. ANALYSIS

### A. CCL Has Not Shown that the CID is Overbroad or Seeks Irrelevant Information

CCL's principal claim is that the CID seeks irrelevant information that falls outside the scope of the FTC's investigation. In particular, CCL claims that Specification D-1, which requires the production of correspondence, notes, work orders and other documents that relate to particular named entities or individuals, is overbroad and seeks information that "has nothing to do with the nature of the FTC's investigation." Similarly, CCL argues that "it is an absurdity to state that the names of CCL's customers and/or lead generators [demanded by Specifications D-2 and D-4] are reasonably related to the FTC's inquiry, as names logically cannot contain information related to an entity's conduct."[11]

We find CCL's objection to be without merit. Agency compulsory process is proper if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant to the inquiry, as that inquiry is defined in the investigatory resolution.[12] It is well established that agencies have wide latitude to determine what information is relevant to their law enforcement investigations.[13] In the context of an administrative CID, "relevance" is defined broadly and with deference to the administrative agency's determination.[14] The specifications of the CID must be upheld so long as the information sought is "reasonably relevant" to the purpose and "not plainly incompetent or irrelevant to any lawful purpose" of the agency.[15] Here, the Commission's investigation examines whether telemarketers, sellers, or others assisting them may have violated Section 5 of the FTC Act or the Commission's Telemarketing Sales Rule.[16] The requested materials are plainly relevant to such an inquiry.

---

[11] *Id.* at 6-7.

[12] *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1088 (D.C. Cir. 1992); *FTC v. Texaco, Inc.*, 555 F.2d 862, 874 (D.C. Cir. 1977).

[13] *See, e.g., Linde Thomsen Langworthy Kohn & Van Dyke, P.C. v. RTC*, 5 F.3d 1508, 1517 (D.C. Cir. 1993) (citing *Texaco, Inc.*, 555 F.2d at 882) (acknowledging that relevance is defined within the scope of investigation that may itself have broad scope).

[14] *FTC v. Church & Dwight Co., Inc.*, 665 F.3d 1312, 1315-16 (D.C. Cir. 2011); *FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001).

[15] *Invention Submission*, 965 F.2d at 1091-92.

[16] *See* Resolution, File No. 0123145, *supra* note 2.

4

CCL also argues that Specification D-1 should be quashed because the request is over-inclusive to the extent that it demands *all* documents regarding the particular named entities or individuals.[17] CCL admits that the specification calls for relevant material.[18] Specification D-1 calls for the production of documents related to entities and individuals that CCL's response to the first CID and other investigative leads show either (1) contracted with CCL to make calls to consumers on behalf of CCL, (2) were in discussions with CCL to make calls, (3) provided leads to CCL, or (4) were principals in entities making calls for CCL. Documents that relate to such companies and individuals are of obvious relevance to the investigation.

Looking at the details of CCL's argument reveals that CCL's claim of over-inclusiveness is, at best, only a theoretical objection to the specification. CCL has not provided any factual basis to support its claim that the CID requires it to produce documents that are not relevant to the investigation.[19] We find that the specification is reasonable. Given staff's prior dealings with CCL with the first CID, staff drafted the specification in a manner that directly identified the relevant information by naming the entities and individuals. Particularly in light of the known relationships between the named entities and CCL, the exploration of documents and areas that do not directly discuss one particular robocall campaign may nonetheless lead to information and materials that are directly relevant to the investigation, and courts have found such inquiries to be relevant.[20] Because relevance is defined broadly during the investigation stage,[21] there is no basis to quash or limit the CID based on CCL's unsupported allegation that the specification calls for material outside the scope of the FTC's investigation.

---

[17] Petition at 7.

[18] Petition at 6-7 ("request D-1 not only calls for information that is relevant to the investigation, but also *any* information between the parties regardless of subject matter").

[19] *See FTC v. Church & Dwight Co., Inc.*, 756 F. Supp. 2d 81, 85 (D.D.C. 2010) (it is the burden of the party receiving the CID "to show that the information it wishes to withhold is irrelevant to the investigation"), *aff'd*, 665 F.3d 1312 (D.C. Cir. 2011); *FDIC v. Garner*, 126 F.3d 1138, 1144 (9th Cir. 1997) ("Once the [agency] has established relevancy, the party opposing the subpoena bears the burden of demonstrating the subpoena is unreasonable."); *Invention Submission*, 965 F.2d at 1090 (citing *Texaco*, 555 F.2d at 882) (it is petitioner's burden to demonstrate that the FTC has exceeded the broad standard for relevance).

[20] *See FTC v. Church & Dwight Co, Inc.*, 747 F. Supp. 2d 3, 9 (D.D.C. 2010) (rejecting claim that "FTC [must show] like any litigant, that the document demanded will lead to reasonably relevant and ultimately admissible evidence" as mischaracterizing the nature of the FTC's investigative authority) (citing *Morton Salt*, 338 U.S. at 642, and *Texaco*, 555 F.2 at 874.).

[21] *See, e.g., Church & Dwight*, 747 F. Supp. 2d at 6 ("Speculations made by the FTC as to the possible relevance of the disputed information were sufficient as long as they were not 'obviously wrong.'"); *Genuine Parts Co. v. FTC*, 445 F.2d 1382, 1391 (5th Cir. 1971) (explaining that the court recognizes the extreme breadth that must be accorded the FTC in conducting an investigation).

CCL also objects to the scope of Specifications D-2 and D-4, which seek documents concerning entities that use phone calls or automated dialers to generate potential leads or customers for CCL. CCL claims that – because the "investigation merely concerns CCL's conduct" – "it is an absurdity to state that the names of CCL's customers and/or lead generators are reasonably related to the FTC's inquiry, as names cannot contain information related to an entity's conduct."[22] We disagree. As stated previously, "The standard for judging relevancy in an investigatory proceeding is more relaxed than in an adjudicatory one. . . . The requested material, therefore need only be relevant to the investigation – the boundary of which may be defined quite generally[.]"[23] Documents related to third-party telemarketing lead generators used by CCL go to the heart of an investigation looking into, among other things, possible violations of the Telemarketing Sales Rule. The names of CCL's customers and lead generators are similarly reasonably related to the investigation. Even if we accept CCL's characterization of the investigation's scope, such documents may provide material directly relevant to CCL's conduct or may lead to other material that is relevant to CCL's conduct.

### B. The CID Properly Asks for Documents Within CCL's Possession and Control

CCL further objects to Specifications D-1, D-2, and D-4 "to the extent that they purport to require CCL to produce documents that are not in its possession." According to CCL, the specifications "have no limitations with regard to CCL's liability to produce information not within CCL's possession." CCL contends that it is a separate legal entity than the companies named or identified in the specifications, and consequently, it asks that the requests be limited to make it clear that CCL is responsible for producing only those documents and information within its possession and control.

CCL's request for relief is unnecessary because the CID already provides appropriate limiting instructions. Specifically, Instruction I provides:

> **Scope of Search:** This CID covers documents and information in your possession or under your actual or constructive custody or control including, but not limited to, documents and information in the possession, custody, or control of your attorneys, accountants, directors, officers, employees, and other agents and consultants, whether or not such documents and information were received from or disseminated to any person or entity.

---

[22] Petition at 7.

[23] *Invention Submission*, 965 F.2d at 1090.

6

These instructions are consistent with the applicable precedent. In the present context, "control" means the legal or practical ability to obtain the responsive documents.[24] Thus, a party can be said to control documents if they are available through a contractual right of access,[25] in the possession of a party's agents,[26] in the possession of a party's officers or employees,[27] or maintained by a third party on the party's behalf.[28] CCL's obligation to produce documents includes the entities or individuals named or described by the CID that fall within these categories. Thus, we find that there is no basis to limit or quash the CID merely because CCL is organized separately from the named companies or individuals. If CCL has a legal right to control the documents,[29] including a right to obtain them on demand from the companies and individuals, then CCL must produce those documents and materials to respond to the CID.

---

[24] *See, e.g., In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) (applying Fed. R. Civ. P. 34) (citing *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997)). *See also, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006); *Dietrich v. Bauer*, 2000 WL 1171132 at *3 (S.D.N.Y. 2000) ("'Control' has been construed broadly by the courts as the legal right, authority or practical ability to obtain the materials sought upon demand.").

[25] *Flagg v. City of Detroit*, 252 F.R.D. 346, 353 (E.D. Mich. 2008) (citing *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928-29 (1st Cir. 1988); *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992)).

[26] *Flagg*, 252 F.R.D. at 353 (citing *Commercial Credit Corp. v. Repper*, 309 F.2d 97, 98 (6th Cir. 1962); *Am. Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006); *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992); *Cooper Indus. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984)).

[27] *Flagg*, 252 F.R.D. at 353 (citing *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994)).

[28] *Flagg*, 252 F.R.D. at 354 (citing *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 477 (D. Colo. 2007)).

[29] CCL argues that the FTC cannot request CCL to produce documents that are possessed by the companies and individuals identified by Specifications D-1, D-2, and D-4, and cites *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143 (D. Del. 2005) and *Linde v. Arab Bank, PLC*, 262 F.R.D. 136 (E.D.N.Y. 2009). The cited cases are inapposite. The courts in both cases considered only whether American subsidiaries of a foreign parent corporation or foreign bank exerted control over the foreign parent. Here, in contrast, the companies and individuals are not corporate parents of CCL and CCL constructively or actually controls the entities.

### C. A Demand for Trade Secret or Proprietary Information is Not a Reason to Quash or Limit the CID

CCL further contends that the CID should be limited or quashed because Specifications D-2 and D-4 demand documents and information that are trade secrets or constitute proprietary information.[30] Even assuming that CCL is correct in describing the materials, that would not be a basis for quashing the CID. The Commission's authority to use investigatory process and obtain relevant materials does not turn on the sensitivity of the information sought.[31] As courts have recognized, "The fact that information sought by the Commission in an investigation constitutes a trade secret does not limit the Commission's power to obtain it. The only issue is whether the data which the Commission seeks is reasonably relevant to its investigation[.]"[32]

The courts have acknowledged that an agency's confidentiality rules and practices provide ample protection for confidential information, and, therefore, the status of the responsive materials as trade secrets or confidential commercial information is not a proper basis for a motion to quash.[33] The Commission's Rules of Practice and Procedure provide CCL with adequate protections. Indeed, in its petition, CCL acknowledged that it was advised during its conference with Commission counsel that it could mark all trade secret information produced as "confidential."[34] Commission rules specify that "no material that is marked or otherwise identified as confidential . . . will be made available without the consent of the person who produced the material, to any individual other than a duly authorized officer or employee of the Commission or a consultant or contractor retained by the Commission who has agreed in writing not to disclose the information."[35] Moreover, material obtained by the Commission:

---

[30] Petition at 8.

[31] *FTC v. Invention Submission Corp.*, 1991-1 Trade Cas. (CCH) ¶ 69,338, at 65,353 (D.D.C. 1991), *aff'd*, 965 F.2d 1086, 1089 (D.C. Cir. 1992).

[32] *FTC v. Green*, 252 F. Supp. 153, 157 (S.D.N.Y. 1966).

[33] *See, e.g., FTC v. Rockefeller*, 441 F. Supp. 234, 242 (S.D.N.Y. 1977) (citations omitted) ("Respondents contend that the subpoenas should not be enforced because they seek confidential information. Such an objection poses no obstacles to enforcement. Even if it did, the impediment would be overcome by the protective provisions [implemented by the FTC], which are more than adequate for the purpose of guaranteeing confidentiality."); *Texaco*, 555 F.2d 862, 884 n.2 (D.C. Cir. 1977) ("It is the agencies, not the courts, which should, in the first instance, establish the procedures for safeguarding confidentiality," citing *FCC v. Schreiber*, 381 U.S. 279, 290-91, 295-96 (1965)).

[34] Petition at 8 n.24.

[35] 16 C.F.R. §4.10 (d).

8

> [t]hrough compulsory process and protected by section 21(b) of the Federal Trade Commission Act, 15 U.S.C. 57b-2(b) . . . and designated by the submitter as confidential and protected by . . . 15 U.S.C. 57b-2(f) [] and § 4.10(d) of [Commission rules] . . . may be disclosed in Commission administrative or court proceedings subject to Commission or court protective or in camera orders as appropriate. . . . Prior to disclosure of such material in a proceeding, the submitter will be afforded an opportunity to seek an appropriate protective or in camera order.[36]

These procedures provide ample protection for CCL for any responsive trade secrets or proprietary information that might be produced.[37] Consequently, there is no basis to limit or quash the CID merely because the documents may include confidential information.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED THAT** the Petition of Caribbean Cruise Line, Inc. to Limit or Quash the Civil Investigation Demand be, and it hereby is, **DENIED**.

**IT IS FURTHER ORDERED THAT** all responses to the specifications in the Civil Investigative Demand to Caribbean Cruise Line, Inc. must be produced on or before May 24, 2013.

By the Commission.

*Donald S. Clark* (signature)

Donald S. Clark
Secretary

---

[36] 16 C.F.R. § 4.10 (g).

[37] *See U.S. Int'l Trade Comm'n v. Tenneco West*, 822 F.2d 73, 79 (D.C. Cir. 1987) ("deference is due an agency in choosing its own procedures for guarding confidentiality").

9